IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

MELVIN ATWOOD, et al,          )
                               )
        Plaintiffs,            )
                               )
v.                             )          CIVIL ACTION NO. 2:09-0379-CG-N
                               )
WEYERHAUSER USA, INC., et al., )
                               )
        Defendants.            )

<u>REPORT AND RECOMMENDATION</u>

This matter is before the court on the plaintiffs' Motion to Remand (doc. 22) and the

defendants' Motions to Dismiss (docs. 16 & 18) the non-diverse individual defendants.[1]  These

motions have been referred to the undersigned for entry of a Report and Recommendation

pursuant to 28 U.S.C. § 636 and Local Rule 72.2.  Upon consideration of the motions and

pleadings of the parties, it is determination of the undersigned that the court lacks jurisdiction

over this action.  Accordingly, it is the recommendation that the plaintiffs' motion to remand be

GRANTED.[2]

<u>Standard of Review</u>

A federal district court may exercise subject matter jurisdiction over a civil action in

which only state law claims are alleged, if the civil action arises under the federal court's

_____

[1]  The court has considered all documents related to each of these motions.

[2]  Because the undersigned finds that the individual defendants have not been
fraudulently joined, and thus that this court lacks subject matter jurisdiction over this action, this
Report and Recommendation does not address the defendants' Motions to Dismiss, which can be
considered by the state court following remand.  *See* <u>University of South Alabama v. American
Tobacco Co.</u>, 168 F.3d 405, 411 (11th Cir. 1999) ("a federal court must remand for lack of
subject matter jurisdiction notwithstanding the presence of other motions pending before the
court.").

diversity jurisdiction.  *See* 28 U.S.C. § 1332(a)(1).[3]  In order for removal to be proper under 28 U.S.C. §1441[4], there must be complete diversity of citizenship between the plaintiff and defendant.  *See* 28 U.S.C. 1441(b). Thus, not only must a plaintiff be a citizen of a state other than the state of which one defendant is a citizen, but also under the rule of "complete diversity", no plaintiff may share the same state citizenship with any defendant. Fitts v. Griffin, 304 F.Supp. 2d 1337(M.D. Ala., 2004) (*citing* Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)).

Additionally, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly . . . [and] . . . all doubts about jurisdiction should be resolved in favor of remand to state court." University of South Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir.1999). Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand"); Campos v. Sociedad Aeronautica de Medellin Consolidada, S.A., 882 F. Supp. 1056, 1057 (S.D. Fla.1994) (The court "must remand to state court any case that was removed improvidently or without

---

[3] 28 U.S.C. § 1332 provides, in pertinent part: "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 , exclusive of interest and costs, and is between...citizens of different states. 28 U.S.C. § 1332(a)(1).

[4] 28 U.S.C. §1441 provides, in pertinent part:
Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.
28 U.S.C. §1441(b).

2

necessary jurisdiction"); *see also* <u>Jerido v. American General Life and Accident Insurance</u>
<u>Company</u>, 127 F. Supp. 2d 1322, 1324 (M.D. Ala. 2001) ("Because federal court jurisdiction is
limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not
absolutely clear.")

 "In evaluating a motion to remand, the removing party bears the burden of demonstrating
federal jurisdiction." <u>Triggs v. John Crump Toyota, Inc</u>., 154 F.3d 1284, 1288 n. 4 (11th
Cir.1998) *citing* <u>Pacheco de Perez v. AT & T Co.</u>, 139 F.3d 1368, 1373 (11th Cir.1998); <u>Diaz v.</u>
<u>Sheppard</u>, 85 F.3d 1502, 1505 (11th Cir.1996); <u>Burns v. Windsor Ins. Co.</u>, 31 F.3d 1092, 1094
(11th Cir.1994). To do so defendants must produce "facts supporting the existence of federal
subject matter jurisdiction by a preponderance of the evidence. <u>Hobbs v. Blue Cross Blue Shield</u>
<u>of Ala.</u>, 276 F. 3d 1236, 1242 (11th Cir. 2001) (citations omitted).  Jurisdictional facts supporting
removal are judged at the time of the removal. <u>Sierminski v. Transouth Fin. Corp.</u>, 216 F.3d 945,
949 (11th Cir.2000) (*citing* <u>Allen v. R & H Oil Co.</u>, 63 F.3d 1326, 1335 (5th Cir.1995)).

<u>Fraudulent Joinder</u>

 Because of the complete diversity requirement, a plaintiff may attempt to prevent
removal by fraudulently joining a defendant who shares the same state citizenship as the plaintiff
by filing a frivolous or otherwise illegitimate claim against a non-diverse defendant. <u>Fitts</u>, 304
F.Supp. 2d at 1337(*citing* <u>Tedder v. F.M.C. Corp.</u>, 590 F.2d 115, 117 (5th Cir.1979) *and* <u>Thomas</u>
<u>v. Jim Walter Homes, Inc</u>., 918 F. Supp. 1498 (M.D. Ala.1996)). When making a determination
on whether complete diversity exists, courts may disregard the citizenship of fraudulently joined
defendants. <u>Id</u>.

 In <u>Henderson v. Washington National Insurance Co.</u>, 454 F.3d 1278 (11th Cir. 2006), the

Eleventh Circuit recently set forth the following standard of review:

> An action in state court may be removed to federal court when the federal courts have diversity or federal question jurisdiction. See 28 U.S.C. § 1441(a). When a defendant removes a case to federal court on diversity grounds, a court must remand the matter back to state court if any of the properly joined parties in interest are citizens of the state in which the suit was filed. See Lincoln Prop. Co. v. Roche, [546 U.S. 81] (2005) (citing 28 U.S.C. § 1441(b)).  Such a remand is the necessary corollary of a federal district court's diversity jurisdiction, which requires complete diversity of citizenship.
>
> When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court. The plaintiff is said to have effectuated a "fraudulent joinder," see Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir.1997), and a federal court may appropriately assert its removal diversity jurisdiction over the case. A defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate either that: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." Id. The defendant must make such a showing by clear and convincing evidence. See Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir.1962).

Id. at 1281 (footnotes omitted).

The burden of proving fraudulent joinder by clear and convincing evidence is a heavy one which requires the court to evaluate the parties' factual allegations and submissions in the light most favorable to the plaintiff and resolve all uncertainties about state substantive law in favor of the plaintiff. Crowe, 113 F.3d at 1538. Also, the court must make "these determinations based on the plaintiff's pleadings at the time of removal" but may "consider affidavits and deposition transcripts submitted by the parties." Id; Cabalceta v. Standard Fruit Co., 883 F. 2d 1553, 1561 (11th Cir. 1989).

The analysis used to resolve a claim of fraudulent joinder is similar to that applied to a motion for summary judgment under Fed.R.Civ.P. 56(b). Crowe, 113 F.3d at 1538. However, "[w]hile 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that

4

used for ruling on a motion for summary judgment under Fed. R.Civ.P. 56(b),' . . . the jurisdictional inquiry 'must not subsume substantive determination.'" Id.  Therefore, "[w]hen determining whether a resident defendant has been fraudulently joined, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.'" Clay v. Brown & Williamson Tobacco Corp., 77 F. Supp.2d 1220, 1223 (M.D. Ala. 1999) (*quoting* Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380-81 (11th Cir. 1998)); *see* Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir.1998) ("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate.") (emphasis in original).

        Thus, in order to defeat plaintiff's motion for remand, defendants must show by clear and convincing evidence that, viewing the evidence in the light most favorable to the plaintiff and resolving all uncertainties of state law in plaintiff's favor, there is no possibility that the state circuit court could find that the complaint states a claim for nuisance, negligence, wantonness or trespass against the employee defendants. However, if there is even a possibility that a state court would find that the complaint states a cause of action against any of the employee defendants, the court must find that joinder is proper.

Liability of Management Employees

        In making a determination whether a cause of action may lie against the allegedly fraudulently joined defendants, the court must follow the law of the state which controls the substantive issues in the action. See Cabalceta, 883 F.2d 1553, 1562. Thus, the undersigned must look to Alabama law to determine whether there is any possibility that plaintiff may assert a

cause of action against the employee defendants in Wilcox County for the alleged nuisance, negligence, wantonness or trespass.[5]

The Alabama Supreme Court, in <u>Ex parte McInnis</u>, 820 So.2d 795 (Ala.2001) *cert. denied*, 535 U.S. 1077, 122 S.Ct. 1961 (2002) stated that "'[a] corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort.'" 820 So.2d at 798-99 (*quoting* <u>Sieber v. Campbell</u>, 810 So.2d 641, 645 (Ala.2001)). The Supreme Court had earlier held that "[i]n Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity." <u>Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc</u>., 496 So.2d 774, 775 (Ala.1986) (citations omitted); *see* Fletcher Cyclopedia of the Law of Private Corporations, §1135 (perm ed. Rev. Vol. 2002) ("An individual is personally liable for all torts which that individual committed notwithstanding the person may have acted as an agent or under directions of another."); *see also*, <u>Galactic Employer Services, Inc. v. McDorman</u>, 880 So. 2d 434 (Ala. Civ. App., 2003) (*quoting* 27 Am.Jur.2d Employment Relationship § 488 (1996)) (footnote omitted) ("In the absence of immunity, an employee may generally be held personally liable to a third person for injuries tortiously caused by the employee, regardless of whether the employer may also be liable. Although a master and servant may each and both be liable for a servant's tort committed in the course of employment, an employee who tortiously causes injury to a third person may be held personally liable to that person regardless of whether he or she committed the tort while acting within the scope of

---

[5] Because the court is addressing pleadings filed in the state court, and determining whether they state a possible cause of action under state law, the court does not address the federal pleading requirements of <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009).

employment, because the employee's liability is based on personal wrongdoing independent of the employment relationship.") Thus, in order to find an employee of a corporation personally liable for the negligent acts of the corporation, "there must have been upon his part such a breach of duty as contributed to, or helped bring about, the injury; that is to say, he must be a participant in the wrongful act." Crigler v. Salac, 438 So.2d 1375, 1380 (Ala.1983) (*quoting* Fletcher's Cyclopedia of Corporations § 1137 at 208 (1975)).

Rice v. Merritt, 549 So. 2d 508 (Ala. Civ. App. 1989) and Yarbrough v. Ledford, 771 So. 2d 1051 (Ala. Civ. App. 2001), establish that under Alabama law, the determination of whether an individual has personally participated in a tort is made on a case-by-case basis upon an evaluation of the evidence of the actual activity of the employee defendant.  With this legal framework in mind the court now turns to the specifics of plaintiffs' motion to remand.

Analysis [6]

This action is brought by several residents of Yellow Bluff in Wilcox County, Alabama, seeking damages caused to real property based on state law theories including negligence, wantonness, continuing nuisance and trespass.  The Complaint alleges that the defendants operate or have operated an industrial plant located adjacent to or near their homes, that defendants are responsible for the regular release of harmful pollutants, that they have had notice

---

[6] In making a determination whether a party has been fraudulently joined, in addition to the plaintiff's pleadings at the time of removal, courts may also consider deposition transcripts and affidavits submitted by either party.  Legg v. Wyeth, 428 F.3d 1317, 1322 (11th Cir. 2005). However, the Eleventh Circuit has cautioned that a district court considering a motion to remand in a fraudulent joinder case must "not weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law."  Crowe v. Coleman,113 F. 3d 1536, 1538 (11th Cir. 1997) (citations omitted)

of such release and associated damages for some time, and that defendants are responsible for damage to and devaluation of plaintiffs' property.   In addition to the two companies that have owned and operated the plant during the relevant time period, plaintiffs have sued three managerial employees at the plant: Brad Larrimore, who was plant manager before the plant was sold, Janet Neighbors, who is the current plant manager, and Kyle Moore, who is the present Environmental Manager.

Defendants removed the action to this court, alleging that the individual, non-diverse defendants were fraudulently joined.  As plaintiffs point out in their Motion to Remand, this court has previously considered a fraudulent joinder argument in a suit involving the same plants,  similar non-diverse managerial employees [two plant managers, an environmental manager and an environmental supervisor], similar claims[7] seeking damages for health problems and injuries caused to adults and minors from the release of the same pollutants, the proffer of affidavits of the individual defendants denying responsibility in general terms, and parallel motions to dismiss.  In that case, Josephine Gladney v. Weyerhaeuser USA, Inc., 06-212-KD-C (S.D.Ala. September 5, 2006), the court entered an order [see doc. 23-exhibit A] finding that the individual management employees *could be* subject to liability under state law, that they thus had not been fraudulently joined, that their presence destroyed complete diversity, and that remand was therefor appropriate.

As in Gladney, each of the individual Defendants in this action offers an affidavit denying personal responsibility.  In Gladney, the affidavits acknowledged the managerial

---

[7] As in the instant case, the prior complaint raised claims based on state law theories of nuisance, negligence, wantonness, and trespass.

employees' responsibilities for matters related to the processes that released the pollutants, and recited that each did not have "authority to specify the type of manufacturing process" and "did not personally participate in the conduct complained of by the plaintiff."  In the instant case, the affidavits acknowledge the employees' general responsibilities related to those processes and recite that they are not "solely" responsible for the operations, changes, or the factors that affect the release of pollutants.

*Janet Neighbors*

In her affidavit, Janet Neighbors testifies that "as manager of the mill, I do not personally direct or approve the emission of the 'pollutants'."  She states that  the emissions are a function of volume produced, the manufacturing processes and pollution control systems, but admits her involvement in meeting weekly production goals, the crux of the volume produced.  She also says that manufacturing and pollution control systems are not within her "sole" control.  And that decisions changing the pollution control system and wastewater treatment system, including the "polishing pond," are made with input from and approval of persons at the corporate level and are not "unilaterally" made at the mill level.

Neighbors denies having any authority to make changes that would require a new or modified environmental permit, and states that proposals for such changes would require review by the Environmental Safety and Health manager at the mill and at the corporate offices.  She also states that she lacks any authority to make capital expenditures, such as changing the polishing pond, without environmental review at the plant level, and lacks authority to make any capital expenditures in excess of $150,000 without corporate review.

Ms. Neighbors' denials, while more detailed than those in Gladney, nonetheless fall well

9

short of absolving her of responsibility; despite the limits on her authority, and the need in some instances to submit her proposed policies to others for discussion or approval, she has not refuted the existence of some authority over the processes that release the sulphuric acid and similar sulphurous compounds at issue.  By her own admission, she retains sufficient authority and discretion, even if it is limited in scope or is reviewed by others, to have personal liability for the way in which she has exerted or failed to exert that authority.  Thus, even without plaintiffs having offered their own affidavits to counter the positive statements made by Ms. Neighbors, the record supports plaintiffs' position that Ms. Neighbors was not fraudulently joined.

The potential personal liability of Ms. Neighbors is sufficient to establish the lack complete diversity between plaintiffs and defendants, and thus this court's lack of jurisdiction over this action.  *See* Florence v. Crescent Resources, LLC, 484 F.3d 1293, 1299 (11th Cir. 2007)("[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary.").  The court nonetheless briefly reviews the other affidavits submitted.

*Kyle Moore*

Defendant Kyle Moore, has been employed as the Environment, Health and Safety Manager for International Paper at the Pine Hill plant since March 2, 2009.  He did not work for defendant Weyerhaeuser, and did not hold this position prior to the transfer of ownership.[8] While plaintiffs may have greater difficulty with proof of causation in light of Moore's short

---

[8]  Moore worked at the plant as an environmental engineer for a prior owner from 1987 to 1989.  His prior employment, some twenty or more years ago in a non-managerial position, seems to be irrelevant to the claims made in this case.

time on the job, his affidavit testimony concerning the limitations on his authority does not

preclude personal liability.  Moore denies personal responsibility for emissions, but Neighbors'

affidavit identified the EHS manager as one of the persons who had greater authority and

discretion over changes to the processes that release the pollutants.  He acknowledges that he has

authority in the environmental permitting process, and that, if he determines that changes to

processes or operations are necessary to comply with environmental laws, he in turn passes that

information to the mill manager and corporate-level superiors.  Moore states that he lacks

authority to change the wastewater treatment or pollution control systems "without consulting

with, and obtaining approval from, IP's corporate-level EHS officials and the mill manager."

*Brad Larrimore*

Defendant Brad Larrimore's affidavit acknowledges that he was the former manager of

the plant.[9]  Larrimore states that "[a]t no time did I have the authority to specify the type of

manufacturing process at the Pine Hill plant.   Furthermore, I did not personally participate in the

conduct complained of ... ."  Larrimore's conclusion that he is not responsible, particularly stated

in such broad terms, is entitled to little if any evidentiary weight.  In light of the greater detail

provided by the current plant manager, which nonetheless is still insufficient to preclude a

finding of personal responsibility, the court finds Larrimore's affidavit in support of the Removal

Notice insufficient to rebut the allegations of the complaint.[10]

---

[9]  The court notes that Larrimore's brief affidavit is identical to those provided in
Gladney.

[10]  Inclusion of a single excerpt of the deposition of Brad Larrimore, taken in the Gladney
litigation, in which Larrimore refused to answer a hypothetical question, does not alter this
conclusion.

None of these affidavits, taken as true, is sufficient to establish that an Alabama court, applying Alabama law, could not find the individual defendants liable.  Indeed, they offer an independent evidentiary basis for a finding that these individual defendants had a degree of authority and discretion over functions relevant to the claims for nuisance, negligence, wantonness and trespass.  For example, Neighbors acknowledges personal knowledge that increased levels of production caused the release of greater amounts of sulphuric acid, and that she coordinated with the main office regarding production levels, and the ordered the plant workers to increase or decrease production accordingly.  Her allegations are entirely consistent with personal involvement in release of the known emissions related to increased production.  Accordingly, the court can not say that there is no possibility of liability.

Defendants cite Legg v. Wyeth, 428 F.3d 1317, 1322 (11th Cir. 2005) for the proposition that plaintiffs cannot rebut affidavits offered by defendant by reliance solely on the allegations of the Complaint.  Where the defendants' affidavits, if taken as true, do not counter the allegations of relevant authority and potential liability, and particularly where the affidavits include support for plaintiffs' position, the fact that plaintiffs do not file counter-affidavits is not necessarily fatal.  In this case, as set forth above, defendant's affidavits, taken as true, do not compel the court to find that the individual defendants were fraudulently joined or to hold that it is proper to exercise jurisdiction over this action.

Motion for Costs

Plaintiffs have made a request for an award of costs and fees related to the removal of this action.  The court may grant costs under 28 U.S.C. § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital

Corp., 546 U.S. 132, 141 (2005).  It is true that, in light of the prior decision of a member of this

court in Gladney , *supra*, defendants were on notice that a claim of fraudulent joinder would be

particularly difficult to support.  However, given the conduct of discovery in Gladney, the

plaintiffs' voluntary dismissal of the individual defendants following remand in that case, and

the additional detail provided in the affidavits of the non-diverse defendants in this action, the

undersigned is sufficiently satisfied that defendants had an objectively reasonable basis for

removing this action.  For that reason, it is recommended that plaintiffs' request for fees related

to the removal be denied.

Conclusion

For all of the foregoing reasons, the undersigned concludes that defendants have failed to

meet their heavy burden of proving by clear and convincing evidence that the individual

defendants were fraudulently joined.  In light of that determination, citizenship of the individual

defendants must be considered in applying the diversity provisions of 28 U.S.C. § 1332.  It is

undisputed that the individual defendants are of non-diverse citizenship from plaintiffs inasmuch

as all are citizens of the State of Alabama. Accordingly, the presence of Neighbors, Larrimore

and Moore as non-diverse defendants precludes the exercise of diversity jurisdiction over this

action and defeats removal. On that basis, the undersigned recommends that plaintiffs' Motion to

Remand (doc. 22) be GRANTED, and this action be REMANDED to the Circuit Court of

Wilcox County, Alabama, pursuant to 28 U.S.C. § 1447(c), for further proceedings.  The

undersigned further RECOMMENDS that no action be taken by this court on the pending

Motions to Dismiss (docs. 16 and 18), in view of the finding that this court lacks jurisdiction.

Such motions may be considered following remand by the state court.  Finally, the undersigned

RECOMMENDS that plaintiffs' request for an award of costs and fees be DENIED.

The attached sheet contains important information regarding objections to the Report and Recommendation.

DONE this 25th day of September, 2009.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

14

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. **Objection**. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.