IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MELVIN ATWOOD, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 09-0379-CG-N |
| ) | |
| **WEYERHAEUSER USA, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter is before the court on the report and recommendation of the magistrate judge (Doc. 53), the objection of defendant International Paper Company ("IP") to the report and recommendation (Doc. 55), the plaintiffs' response to the objection (Doc. 58), and defendant IP's reply brief to the plaintiffs' response (Doc. 62), a reply which defendant Weyerhaeuser Company joined (Doc. 61). The magistrate judge recommended that this action be remanded to state court because the plaintiffs and three of the defendants are citizens of the State of Alabama and the defendants failed to establish by clear and convincing evidence that the individual defendants were fraudulently joined. Upon a review[1] of those portions of the report and recommendation to which the objection is made, the court agrees with the findings of the magistrate judge and finds that this civil action should be remanded to the Circuit Court of

---

[1] The parties dispute the standard of review this court should use to evaluate the magistrate judge's order. The plaintiffs claim that a magistrate judge's remand order is a nondispositive decision and should be reviewed under a standard of "clearly erroneous or contrary to the law" while the defendants argue that a magistrate's remand order is a dispositive issue and should be reviewed de novo. Since this court agrees with the magistrate judge's findings under both standards of review, this court will not address this issue at this time.

Wilcox County, Alabama.

## FACTS

On May 22, 2009, the plaintiffs, who all are current property owners located in and around Yellow Bluff, Alabama, filed an action against seven corporate defendants and three individuals in the Circuit Court of Wilcox County, Alabama.  (Doc. 1, Ex. 5, ¶¶ 1-11).  The plaintiffs allege (1) that the defendants operate or have operated an industrial plant (the "Pine Hill Mill"), which is currently owned by IP and formerly owned by Weyerhaeuser Company and is located adjacent to or near their homes, (2) that the defendants are responsible for the regular release of harmful pollutants, (3) that they have had notice of such release and associated damages for some time, and (4) that defendants are responsible for damage to and devaluation of plaintiffs' property.  (Doc. 1, Ex. 5, ¶¶ 15-6, 18, 28-9; Ex. 3, Neighbors Aff., ¶ 3 & 7).

The three individual defendants either were previously or are currently managerial employees at the plant: Brad Larrimore ("Larrimore"), who was plant manager before the plant was sold to IP; Janet Neighbors ("Neighbors"), who is the current plant manager; and Kyle Moore ("Moore"), who is the present environment, health, and safety manager.  (Doc. 1, Ex. 3, Neighbors Aff., ¶ 3; Ex. 4, Moore Aff. ¶ 3; Doc. 12, Larrimore Supp. Aff., ¶ 4).  While the corporate defendants are all citizens of states other than Alabama,[2] the three individual defendants are citizens of Alabama.  (See Doc. 1, Ex. 5, ¶ 8, 10-11; Ex. 3, Neighbors Aff., ¶ 1; Ex. 4, Moore Aff. ¶ 1).

---

[2] Corporate defendant IP is a citizen of the states of New York and Tennessee.  (Doc. 1, Ex. 1, Carter Aff. ¶ 2).  Corporate defendant Weyerhaeuser Company is a citizen of the state of Washington.  (Id., Ex. 2, Merrick Aff., ¶ 3).  IP asserts that the remaining corporate defendants either never existed, have been dissolved, or merged into defendant Weyerhaeuser Company, thus don't have separate legal existence.  (Doc. 1, ¶ 4; Ex. 2, Merrick Aff., ¶ 2).

On June 26, 2009, IP filed a notice of removal in this court asserting that the three individual defendants had been fraudulently joined in this action. (Doc. 1, ¶ 12). Once these defendants are deemed improperly joined by this court and therefore disregarded, IP asserts that this court would have diversity jurisdiction under 28 U.S.C. § 1332(a) because each plaintiff would then be completely diverse from the remaining defendants. (Id., ¶ 13). The notice was timely filed and recites that the defendants jointly give notice of removal and that the defendants jointly consent to the removal. (Id., ¶¶ 6 & 11).

Defendant IP attached affidavits from each of the three individual defendants to the notice of removal. (See Doc. 1, Ex. 3, Neighbors Aff.; Ex. 4, Moore Aff.; Ex, 8, Larrimore Aff., ¶ 4). Neighbors affidavit states in relevant part:

> 4. I am not personally responsible for the Pine Hill Mill's alleged emissions of the "pollutants" identified in the Complaint... nor have I personally released any such "pollutants" or other substances from the mill."
> 5. ...[I]n my capacity as manager of the Pine Hill Mill, I do not personally direct or approve the emission of the "pollutants" that Plaintiffs allege have caused injury. As mill manager, I liaise with the Pine Hill Mill's various department heads to facilitate the mill's achievement of the production goals set by IP at the corporate level in Memphis. My duties also include implementing the budget for the Pine Hill Mill's operations that is set by IP corporate.
> 6. The emission of substances from the Pine Hill Mill is a function of the Pine Hill Mill's production volume, manufacturing processes, and pollution control systems, which are designed to ensure operation in compliance with applicable environmental laws, regulations and permits. I do not have authority to unilaterally alter these components of the Pine Hill Mill. The products produced at the Pine Hill Mill and the level of production for those products is established by my superiors in Memphis on a frequent basis; currently my production goals are set weekly. The manufacturing processes and pollution control systems are similarly not within my sole control; instead, they are established and maintained in concert with IP's corporate-level environmental health and safety personnel and manufacturing personnel.
> 7. ... I do not have, and have not had, the authority to change the Pine Hill Mill's wastewater treatment system, including the "polishing pond," or the pollution control systems. Decisions to change these systems are made with input from, and the approval of, the IP corporate level; they are not unilaterally made at

>the mill level.
>   8. The numerous state and federal environmental laws to which the Pine Hill Mill is subject have a significant impact on the pollution control systems in operation and any changes thereto... My responsibilities include assuring compliance with these permits and with regulations. I do not personally have the authority to make any change that may require the Pine Hill Mill to obtain a new permit or to seek modification of an existing permit. Any such operation changes must be reviewed, and approved by, the mill's environmental health and safety manager... and his EHS superiors at the IP corporate level. My 'responsib[ilities]' relating to the mill's 'maintain[ence] and/or operat[ion],' Compl., ¶ 10, thus, have always been limited by the scope of my authority, the decisions of my superiors at IP, corporate policies, and environmental regulations.
>   9. ... I have not personally 'avoid[ed] the expense associated' with 'obviat[ing] the polishing pond treatment system' My authority to make capital expenditures is limited...

(Doc. 1, Ex. 3, Neighbors Aff.)

On July 6, 2009, Neighbors and Moore filed a motion to dismiss the plaintiffs' case against them for the reasons stated in the notice of removal, and this motion was referred to the magistrate judge. (Doc. 16). On July 23, 2009, the plaintiffs filed a motion to remand the action to the Circuit Court in Wilcox County, Alabama, because the matter was improperly removed due to the lack of complete diversity between the plaintiffs and all of the defendants. (Doc. 22). This motion was also referred to the magistrate judge.

On September 25, 2009, the magistrate judge recommended to this court that the plaintiffs' motion be granted to remand the case to the Circuit Court of Wilcox County, Alabama. The magistrate judge also recommended that "no action be taken by this court on the pending Motions to Dismiss [], in view of the finding that this court lacks jurisdiction." Lastly, the magistrate judge recommended "that plaintiffs' request for an award of costs and fees be [denied]." (Doc. 53, p. 13). On October 9, 2009, defendant IP objected to the report and recommendation "in two core respects". First, defendant IP asserts that "the recommendation is

4

based on an incorrect legal standard for determining personal liability of corporate employees under Alabama case law." Second, defendant IP maintains that the report "draws unwarranted conclusions from the evidence that was submitted in support of removal." (Doc. 55, p. 2).

## LEGAL DISCUSSION

### A. Whether the magistrate judge used the incorrect legal standard

Defendant IP does not dispute the legal standard governing fraudulent joinder. The Eleventh Circuit has stated that "a court must remand the matter back to the state court if any of the properly joined parties in interest are citizens of the state in which the suit was filed." To avoid this remand, a defendant may prove that a co-defendant was fraudulently joined, and if proven, the Eleventh Circuit stated that a "district court must [then] ignore the presence of the non-diverse defendant and deny the motion to remand..." To prove this, the defendant "must demonstrate either that: '(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.'" Furthermore, "[t]he defendant must make such a showing by clear and convincing evidence." Henderson v. Washington Nat'l Ins. Co., 454 F.3d 1278 (11th Cir. 2006)(quoting Crowe v. Coleman, 113 F.3d 1536, 38 (11th Cir. 1997).

Defendant IP also does not contest that an employee can be personally liable for a tort in which he or she personally participates. The magistrate judge is correct that under Alabama law, "a corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort." (Doc. 53, p. 6)(quoting Ex parte McInnis, 820 So.2d 795 (Ala. 2001)(quoting Sieber v. Campbell, 810 So.2d 641, 645 (Ala. 2001))(internal quotation marks omitted), and that "[t]he Supreme Court had earlier held that '[i]n Alabama, the general

5

rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity." (Id.)(quoting Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc., 496 So.2d 774, 775 (Ala. 1986)(citations ommitted)); see also Consol. Constr. Co. of Ala. v. Metal Bldg. Components, L.P., 961 So.2d 820, 824 (Ala. 2007).  In sum, this court agrees with the magistrate judge that "in order to find an employee of a corporation personally liable for the negligent acts of the corporation, 'there must have been upon his part such a breach of duty as contributed to, or helped bring about, the injury; that is to say, he must be a participant in the wrongful act.'" (Doc. 53, p. 7)(quoting Crigler v. Salac, 438 So.2d 1375, 1380 (Ala. 1983)(quoting Fletcher's Cyclopedia of Corporations § 1137 at 208 (1975))).

However, defendant IP does challenge the magistrate judge's assessment of how much participation is necessary for an employee to be found liable.  After analyzing the three individual defendants' affidavits, the magistrate judge concluded:

> None of these affidavits, taken as true, is sufficient to establish that an Alabama court, applying Alabama law, could not find the individual defendants liable. Indeed, they offer an independent evidentiary basis for finding that these individual defendants had a degree of authority and discretion over functions relevant to the claims for nuisance, negligence, wantonness and trespass... Accordingly, the court can not say that there is no possibility of liability.

(Doc. 53, p. 12).

Defendant IP asserts that the magistrate judge's conclusion, "that an employee may be 'personally liable' for a corporation's allegedly tortious acts - here, the 'Plant's emissions' - whenever '**a degree of** authority and discretion **over functions relevant to**" the alleged claims, is too broad of an interpretation of Alabama law."  (Doc. 55, p. 3)(quoting Doc. 53, p. 12). Relying on Galactic Employer Servs. v. McDorman, 880 So.2d 434, 438 n.2 (Ala.CivApp.

6

2003),[3] defendant IP argues that " the Alabama case law [instead] reflects a prudent line drawn by Alabama courts - only those agents who 'personally participated,' i.e., agents who 'directed controlled, approved, or ratified the decision which led to the plaintiff's injury" may be personally liable. (Doc. 55, p. 3). In determining how much control is needed, defendant IP asserts that the requisite control should be limited to "corporate owners, officers, and directors because these 'corporate officers' are "charged in law with affirmative official responsibility in the management and control of corporate business." (Id., p. 4)(quoting Crigler v. Salac, 438 So.2d at 1378 & 1380).

Contrary to defendant IP's assertions, the magistrate judge's assessment of the law is correct.  This court does not need to reach a definite pronouncement of how much participation is necessary for an employee to be found liable under Alabama law, because in reviewing a motion to remand in light of a fraudulent joinder claim, the precise contours of the amount of participation of the three individual defendants is not relevant.[4] The Eleventh Circuit has made it clear that this court may only deny a motion to remand if the defendants have proven by clear and convincing evidence that there is "no possibility" that the plaintiffs "can establish a cause of action against the [three] resident defendant[s]..." Henderson, 454 F.3d at 1283 (emphasis in original)(citations omitted). In other words, remand must be granted if "after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested

---

[3] Galactic is clearly distinguishable to the present case because it concerns the liability of officers to creditors of a corporation, not for the company's torts that cause physical injury like in this case.

[4] Furthermore, if there is any ambiguity or doubt about substantive state law, this fact "favors remand to state court." Crowe v. Coleman, 113 F.3d 1536, 1539 (11th Cir. 1997).

issues of fact in favor of the plaintiff, there need only be 'a reasonable basis for predicting that the state law <u>might</u> impose liability on the facts involved.'" Crowe, 113 F.3d at 1541-42 (emphasis in original)(citations omitted)("In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims.  Although we have said that district courts may look beyond the face of the complaint, we emphasize that the district court is to stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent.")

As a result, if after examining the plaintiffs' complaint and accompanying affidavits in this case, this court is able to say that there is any possibility, no matter how small, that an Alabama state court might find that the three resident defendants had personally participated in the tort, then the Eleventh Circuit has mandated that this court shall grant the plaintiffs' motion for remand.  Because of the foregoing, this court finds that the magistrate judge used the correct legal standard in assessing whether the three individual defendants were fraudulently joined to this matter.

**B. Whether the magistrate judge drew unwarranted conclusions from the evidence**

As stated above, as the removing party, the defendant bears the burden of proving fraudulent joinder by clear and convincing evidence.  Crowe, 113 F.3d at 1538.  The burden "is a heavy one"; if the plaintiff states "even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court."  Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998).  "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties."  Id.  The

8

proceeding appropriate "for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)." Crowe, 113 F.3d at 1538(quoting B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 n.9 (5th Cir. Unit A 1981)). In such a proceeding, the district court must "resolve all questions of fact... in favor of the plaintiff." Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989). However, while the analysis is similar, "the jurisdictional inquiry 'must not subsume substantive determination' ... [and w]hen considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Crowe, 113 F.3d at 1538. This court's authority to assess the "ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims" and it should not attempt to determine "the merits of cases that do not appear readily to be frivolous or fraudulent." Id. at 1541-42.

Each of the individual defendants offered affidavits denying personal responsibility.[5] In regard to defendant Neighbors, the magistrate concluded that Neighbors' denials in her affidavit "fall well short of absolving her of responsibility; despite the limits on her authority, and the

---

[5] Defendant IP also asserts that the magistrate judge improperly relied on Gladney v. Weyerhaeuser USA Inc., 06-212-KD-C (S.D.Ala. Sept. 5, 2006). (Doc. 55, pp. 11-2). This court disagrees. First, the Gladney order is persuasive since it involved the same plant, similar non-diverse employees and similar claims from the release of the same pollutants, and dealt specifically with the issue of whether different Weyerhaeuser managers of the Pine Hill Mill were fraudulently joined in a personal-injury action from the same pollutants. Second, in addition to comparing the present case to Gladney, the magistrate judge here made an independent determination of whether each individual defendant might be personally liable under Alabama law by looking at each of their affidavits. See Yarbrough v. Ledford, 771 So.2d 1051 (Ala.Civ.App. 2000); Rice v. Merritt, 549 So.2d 508 (Ala.Civ.App. 1989)(cases establish that under Alabama law, the determination of whether an individual has personally participated in a tort is made on a case-by-case basis upon an evaluation of the evidence of the actual activity of the employee defendant).

need in some instances to submit her proposed policies to others for discussion or approval, she has not refuted the existence of some authority over the process that released [the hazardous compounds] at issue" In other words, "she retains sufficient authority and discretion, even if it is limited in scope or is reviewed by others, to have personal liability for the way in which she exerted or failed to exert that authority."  (Doc. 53, p. 10).

      The court agrees with the magistrate judge's conclusions as to defendant Neighbors. Although defendant IP wants this court to gauge whether Neighbors' limited authority is enough personal participation in the tort to make her liable, our inquiry is much more basic.  The court must merely decide whether the defendants have shown by clear and convincing evidence that no Alabama court could find plaintiffs' complaint and this affidavit sufficient to invoke claims for nuisance, negligence, wantonness and trespass.  Neighbors' patchy denials - that she did not "personally direct or approve the emission of the 'pollutants,'" that manufacturing and pollution control systems were not within her "sole" control, and that neither she nor anyone at the mill could "unilaterally" change the pollution control system and wastewater system[6] - may ultimately be victorious in denying liability, but this court is unable to say at this stage that there is no possibility the plaintiffs have asserted a colorable claim of nuisance, negligence, wantonness and trespass against Neighbors.  See Crowe, 113 F.3d at 1538 ("When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.").  The decision as to the sufficiency of the pleadings and Neighbor's denials is for the state court, "and for the federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium

---

[6] (Doc. 1, Ex. 3, Neighbor Aff., ¶ 5-7)

between the federal and state judiciaries that our federal system demands." Henderson, 454 F.3d at 1284.

Since the defendants have not shown by clear and convincing evidence that Neighbors was fraudulently joined, this potential liability "is sufficient to establish the lack [of] complete diversity between plaintiffs and defendants, and thus this court's lack of jurisdiction over the action."  (Doc. 53, p. 10)(citing Florence v. Crescent Resources, LLC, 484 F.3d 1293, 1299 (11th Cir. 2007)("[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that the joinder of the resident defendant was fraudulent, and remand is necessary.")); Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983)("If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.") superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993);

## CONCLUSION

After due and proper consideration of all portions of this file deemed relevant to the issues raised, and a determination of those portions of the report and recommendation to which objection is made, the report and recommendation of the magistrate judge is **ADOPTED** as the opinion of this court.  It is **ORDERED** that this case be and is hereby **REMANDED** to the Circuit Court of Wilcox County, Alabama.  Plaintiffs' motion for attorney's fees, costs and expenses is **DENIED**.  The court having granted plaintiffs' motion to remand, finds that the

defendants' motion to dismiss (Doc. 16) is **MOOT**.[7]

      **DONE** and **ORDERED** this 26th of February, 2010.

                                        /s/ Callie V. S. Granade
                                        UNITED STATES DISTRICT JUDGE

---

[7] Because this court has determined that this case should be remanded to state court, this court then does not have the subject matter jurisdiction to determine any other motions. See Univ. of S. Ala. v. Am. Tobacco Corp., 168 F.3d 405, 411 (11th Cir. 1999).